et al. Mr. Shuler, I see you reserve one minute for rebuttal. Yes, sir. Okay, you can go when you're ready. Good morning, Your Honors. May it please the Court, my name is Peter Schuyler, Kitson & Schuyler PC. I represent the appellant here, Brian Dubois. I'd like to address the crux, the main issue in this case that everything revolves around, and that is whether or not there was a constitutional violation for Mr. Dubois when he was speaking to the town board. And that is really a factually specific inquiry. The context of his communication to the board, to the town board, was part of a larger examination by the board of whether to retain the police department. And they had engaged an outside expert to do that. As part of that process, there was an illegal entry into the police department. And Mr. Dubois, while investigating that, had requested that the town supervisor provide video outside the police department for him as part of his investigation. The supervisor refused to provide that information, and he was unable to complete his report, which he was mandated to do. Why isn't that show that under Garcetti, this is not speech as a citizen, it's as an employee. You just said, and it's in his emails, the emails he sent were clear. I need this video pursuant to my mandated duty to investigate this. So that's undisputed. That's, you know, those are the emails. They're incorporated, obviously, into your complaint by reference. So why isn't that dispositive on the employee or as a private citizen, right? Exactly, your honor. So why isn't the fact that he was invoking his mandatory duty to investigate this and get a hold of that video, why isn't that dispositive? It's not because, for several reasons. One, in the context of this communication, he was not making it to someone within his chain of command. In this town of Germantown, under town law, they had created an independent police commission, and that's the body that was responsible for the operation of the police department. Mr. Bott had gone internally to his supervisors at the police commission about the issue of the break-in, and they were not responsive. This is a separate communication that he made to the town board. The town board is not part of his chain of command, is not part of his job. But he went there because he believed the town board had the ability to overrule what had happened within the police department, right? It wasn't like he went to a newspaper or somewhere else to talk about some issue that he had. This all was being done in an effort to utilize his duties as a police officer, right? Was he going there to get their help? Well, that may have been part of the motivation, but he was exposing a larger problem to the town board, and this is a concern. He was not only making that concern, that they were, the supervisor was frustrating his efforts to file a report. This case is analogous to the cases of Jack Lear v. Byrne and the more recent case of Speck v. City of New York. Both those cases involved either Jack Lear, who was a police officer, or Speck, who was a fireman, fire department person. Both of those cases involved them being told to file a false report. Right. Which is a very specific situation, not alleging here anything remotely resembling that, right? Well, the basis for Mr. Dubois going to the town board was that he was required to fill out the report. He couldn't fill out the report correctly. He was in the process of doing that because the town ultimately stopped, excuse me, the supervisor ultimately stopped them in his tracks, and then they fired him. He was mandated to do this investigation. They were, in essence, asking him to disregard his responsibilities to file a true and accurate Jack Lear and inspect. Can you point me to the record support for your assertion that he was asked to file a false report? I'm sorry, your honor? Can you please point me to the record support for your assertion that he was asked to file a false report? He was not, no, I didn't, I was not indicating that he was asked to file a false report. What was alleged in the complaint that he was in the process of it, they refused to give him, he could not complete, he could not complete the report without the requested video, and therefore they were frustrating his filing a state mandate. So the legal proposition you're asking us to adopt is that when someone complains that they're being prevented from doing some aspect of their job, filing a report, you know, whatever it might be, that makes it a private citizen's speech? Is that what you're suggesting? The context here, which makes it analogous to those two cases, is that there is an allegation of malfeasance on a part of a government official, here the supervisor. The supervisor was responsible for illegally entering the police department. Mr. Dubois brought that malfeasance to the town court, and in the context of his communication, which is, I believe the email that was provided by the respondents provided at 850, but in the context of that, again, the context, the broader context of his communications to the town board was the evaluation of the police department, and they were going through a process where they were trying to get rid of the police department. But don't we have to look at, though, again, what his purpose was in making this complaint, and it really does not, there's nothing in that email that suggests he is concerned broadly with reporting misconduct in the department. It's very much that I'm being stopped and fulfilling my duties because of these individuals, who, by the way, are not even named in this email, and so it does not suggest that this is about anything other than I'm being frustrated in my job. Well, again, he was raising the issue to the town board, and he not only raised the issue of being frustrated about getting the necessary information to complete a state-mandated report. Again, this is outside of the chain of command. He was addressing problems with the supervisor, and he also discussed prior issues of public concern, which the town board was not aware of. The town supervisor was the former judge, and while he was judge, he was involved in a domestic violence instance that Mr. Dubois investigated. He referenced that, that this is akin to the supervisor just disregarding the law. And secondly, he was criticizing the district attorney in that email about his policy of not prosecuting DWIs. Can I just jump in? And I understand we interpret the complaint favorably, but the way that this email is written, you're saying that he's criticizing the district attorney. It's not named. I mean, the email talks about, in general, if a prosecutor is not going after DWI, those types of things. It's very, the fact that this email is very sort of vague and does not have the feel of, you know what, this supervisor is causing me a problem. Town board, I'm telling you about it. It doesn't read like that. Well, you have to appreciate that on the email, you have the district attorney. And we don't know, I don't have the answer why the district attorney was originally put on this email chain. We allege in the complaint that he was put on the email chain by the supervisor on his own, and that Mr. Dubois simply was responding to all to this initial email chain. So when he was referring, and the complaint does allege that Mr. Dubois had previously, again, in his role as a citizen, criticized the district attorney for his policy in that county of not prosecuting DWIs. There's only a handful of people on that email. One of them is the district attorney, and he's referring, he doesn't mention them by name, but he's saying, you know, the district attorney who's not prosecuting DWI cases. Can I ask you to just, your time is running out, I want you to address the Second Amendment claim just for one minute before your adversaries speak. The only two claims you're raising on appeal are the First Amendment retaliation claim and the Second Amendment claim, is that correct? That is correct, Your Honor. So on the Second Amendment claim as to the town, I just don't understand, they were seeking to prevent him from having town-owned firearms. So I'm not sure how that implicates the Second Amendment. And, let me finish, and they weren't successful. So it didn't really, at least as it relates to them, it didn't infringe his rights in any way, or am I missing something? You are missing something, Your Honor. I didn't infringe his rights. The reason, it's simply that the two First Amendment claim and the Second Amendment claim are obviously completely intertwined here. If he hadn't made the criticisms in his email directly to the supervisor and directly to the district attorney, who then, as alleged in the complaint, conspired almost immediately, this was at nine o'clock in the morning, they had, before the morning was out, multiple letters had been delivered to the court requesting that the officer's carry permit be suspended by making false allegations. They said he was mentally despondent and that he had automatic weapons. Both of those were completely false. So as a result, the complaint alleges that the town officials, along with the district attorney, with again, within a matter of hours, this is not days or weeks, within a matter of hours, after receiving this email that had criticism in it, immediately responded by concocting this plan to fire him from his job as a police officer by first, as a predicate, saying you're not authorized to carry a firearm, therefore you can't decide to do that. They wrote a letter providing information, but they made no motion. This is not a malicious prosecution claim, for example. This is just submitting a letter. These are very unique facts here. The district attorney had no purpose being involved in this dispute, none whatsoever. It's unknown why he was brought into this conversation. They initially said that the respondents initially claimed that he was initiating the below. They said they claimed that he initiated the license revocation. On appeal, now they say he simply wrote them a letter. All right. So you have one minute. They took his weapons. He was fired. He was without his weapons for three months. He eventually got a better. I understand. Thank you. Thank you. All right. I think we have counsel on Zoom for Mr. Burey and Mr. Moore and the town, correct? Can you hear us okay? I can, your honors. Thank you. All right. Go ahead. Thank you. Good morning, honors. May I please the court. My name is Lorraine Jelinek, and I am counsel for the town appellees in this matter who are the town of Germantown, as well as the town's former supervisor, Mr. Robert Burey, and the town's former board member, Mr. Ronald Moore. In light of the allocation of time between myself and the co-defendant in this matter, I'll keep the town's arguments brief and just emphasize a few specific points, unless, of course, your honors have any particular questions for me. As the appellate had just reiterated a few moments ago, the crux of this appeal is really whether Judge Skullin correctly applied the standard of review under Rule 8 of the FRCP, as well as the United States Supreme Court's precedent in the Iqbal case, which had clearly occurred in this matter. Notably, and relevant to this appeal, is that Judge Skullin had re-emphasized the speculation, legal conclusions, and unsupported conclusory allegations are not actual plausible claims for relief, and district courts obviously are not required to credit those types of allegations on the motion to dismiss stage. Judge Skullin's dismissal decision in this case is really a textbook example of that legal principle, and for example, as appellate's counsel was just speaking about a few moments ago with respect to the First Amendment retaliation claim in this case, and as your honors correctly had emphasized, it's obvious that the appellate was speaking in his capacity as a police officer for the town, and also exclusively on an issue that was personal to him related to his perception and his opinions on the town supervisor, as well as the co-defendant district attorney. These personal issues related back to more than six years prior to those emails being sent. This is clear, as your honors have indicated, from the actual language of the emails, which can be found on pages A-50 through A-52 of the record. Can I just, excuse me. Sorry? Yes, no, I was just going to ask, is it the case though that speech can still qualify as protective even if there is a personal grievance component to it? Can it both be personal work-related grievance as well as matters of interest, matters of public concern? Isn't it possible for both of those to be at play? To answer your question, yes, it's possible. It's very dependent on the factual context related to the specific The actual language of this email really and clearly indicates that whatever grievances or disagreements that the appellate had with the town supervisor or potentially members of the town board or the DA, those were really issues that came up in his capacity or in his official capacity as a police officer. They relate, as your honors correctly pointed out, they relate to the alleged break-in, which actually was not a break-in, just a little side note. The town supervisor obviously had a key and had authority to access the building as the executive official for the town. But other than that, the emails from the appellate related to that break-in, that attempted investigation that the appellate wanted to do in response and also made reference to potentially making an arrest. So these are all things that are obviously clearly related to the appellate's official duties as a police officer for the town. Moreover, I just wanted to mention the personal issues related to the town supervisor of the appellate. These are not things that can constitute a constitutionally protected speech. Can you spend a minute on the Second Amendment claim? Sure. So going over to the allegations for the Second Amendment claim as Judge Skollin had clearly articulated in his decision, and this is something that I just wanted to point out really if you look at the chain of email exchanges, which again, this is on page A-50 of the record, the email exchange that the appellate had sent to the town board members as well as the town supervisor, Mr. Beery, also had copied the Columbia County DA on it. So to the extent that the of these issues with the appellate, that was due to the appellate's conduct in copying them on his email, which is dated June 1st, 2018. So that's really when the DA initially became aware of this conduct. After that, as your honors can see, and this is going back another page on page A-49 of the record, the DA had provided the court with a letter with respect to the email exchanges that he had been copied on by the plaintiff. And you can see in the letter that that letter by the DA was not even a letter requesting a suspension. This is something else I just wanted to emphasize because it highlights that the decision ultimately to suspend the appellate's pistol license, at least temporarily, was made by the judge. Because you see in this letter on A-49, the DA does not officially make the request that the appellate's pistol license was even suspended. The letter reads at the very end that the court is requesting that the court, any action that the court deems is appropriate, and ultimately that was decided subsequently by Judge Nichols to make the ultimate decision to temporarily suspend his license. Thank you. I'll let them cover that if they wish. All right. Thank you. Okay. All right. Thank you, your honors. We'll hear now from Mr. Murphy representing the district attorney. Thank you. Good morning. May it please the court, my name is Thomas Murphy. Murphy burns up in Albany. We represent appellee Columbia County District Attorney Paul Chyka. Your honors, the plaintiff appellant's complaint fails to state a first or second amendment violation claim against DA Chyka as Senior Judge Scullin opined below. First, as to the first amendment violation, as Judge Scullin pointed out, this speech was not related to anything other than personal employment issues, not issues of public concern. To your honors' point, he didn't take it to the public. He kept it within house, complaining to the board, as your honor pointed out, hoping the board might overrule the supervisor, etc. So it was an in-house squabble and there was no second, excuse me, first amendment violation to begin with. More importantly, DA Chyka is employed by the county, not the town. Officer Du Bois is employed by the town, not the county. There was no employment relation. DA Chyka did not have the position, therefore, to cause any adverse employment action with regard to Officer Du Bois. As to the second amendment claim violation, revocation of his pistol license, pistol permit, the facts are clear. We've been talking about them already this morning. DA Chyka came into work that morning and he was dragged into this internal employment squabble because someone, perhaps plaintiff, perhaps someone else, copied him on this email chain. Now that he's involved, he read the email chain. His subjective belief was it raised concerns as to the mental status of this gentleman, Officer Du Bois. He knew Officer Du Bois to be in possession of pistols. He also believed, and he stated upon information and belief, the officer may have access to town weapons, could be automatic in nature. The letter speaks for itself. As counsel just pointed out at A49, DA Chyka wrote a letter to the two judges who are in charge of pistol licenses within the county, expressed his concern, and left it to the court to take whatever action or no action with regard to the issue. That was the sum total of DA Chyka's involvement at that point, and as Judge Scullin pointed out, DA Chyka did not revoke a pistol license. There is no process claim here. There's none of those kinds of allegations. It was Judge Nichols who ultimately made the decision to revoke the pistol license. The last thing I would address, Your Honor, hasn't come up, but it did come up in papers. The fact that we argued immunity on behalf of DA Chyka is of no relevancy here at this juncture of the case. The court clearly stated, only if the plaintiff had stated a plausible claim of a constitutional violation would the issue of immunity come into play. So the fact that it wasn't reached by the court below, we had argued a defense. My knee-jerk reaction is not to expect a dismissal to have come the way it came. We argued the defense of immunity for the conduct of the DA. It doesn't matter that that wasn't something that the court based its decision on. So in conclusion, District Attorney Paul Chyka respectfully requests that this court finds that plaintiff's complaint fails to state a claim as against him and affirms the decision of the District Court. Thank you, Your Honor. We'll hear the rebuttal. I'd ask for a one-minute rebuttal, and then I'd just make two brief points. Yeah, come up. Two points. One in response to Mr. Chyka here. The idea that he had nothing to do with the suspension of the pistol license is completely disingenuous. The complaint alleges that he made a completely false statement that the officer was mentally despondent and that he had an automatic weapon. What else was the court to do when they received that on the letterhead of the District Attorney, reporting that he had personal knowledge? What precisely happened? What do you contend precisely happened that constituted a deprivation of his, an impairment, if you will, of his right to bear arms? He had a pistol permit he used as part of his employment in order to carry weapons, fulfilling his job duties. They wanted to get rid of him. The complaint alleges that the District Attorney in the town wanted to remove him from office, and they concocted the plan that in order to remove him, let's just take away his pistol permit. So they created this, the District Attorney made a false letter, created a false letter to the licensing authority, that's the county judge, saying that this guy was mentally despondent and had an automatic weapon. And that led to the immediate revocation of his pistol permit, the confiscation of all his weapons that he was out, and then led to him being fired from his job. So how is it possible here that somebody can go to the court and completely make up a story and then say, well, it wasn't my responsibility because this is, you know, I didn't initiate the action. He did, he set the process in place that he put the information in front of the court for them to make a decision to immediately suspend the license. The second point I wanted to make was, again, going back to the purpose of the email. He was talking not in his personal capacity, and, you know, the respondents here, they added all these documents to their motion to dismiss, 35 pages, there were emails, all these things. They're talking about and speculating about facts that are simply cannot be considered and should not have been considered by the lower court, such as the town's attorney comment that the supervisor had authority to enter the office. No, he didn't have authority. The complaint alleges he didn't have authority. The complaint alleges that he committed a crime and that he was, that the Officer Duval was being frustrated in making a report about that crime. All right, we have the argument. Thank you very much to both sides. We'll reserve decision. Have a good day. Thank you. Thank you.